UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

INGRID COLLINS,

                        **Plaintiff,**                        **18-CV-777Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #10.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on May 21, 2014, alleging disability beginning April 1, 2013, at the age of 36, due to breathing problems, chronic obstructive pulmonary disease ("COPD"), asthma, depression and anxiety. Dkt. #5, pp.172 & 218.

On March 3, 2017, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Tanya Sheila, at an administrative hearing before

Administrative Law Judge ("ALJ"), Paul Georger. Dkt. #5, pp.72-120. Plaintiff testified that she dropped out of school in the ninth grade but obtained her GED and completed a four-week training to become a Certified Nursing Assistant ("CNA"), even though she missed one day each week of the training, but could not perform the physical duties of that position once it was time to get out of the classroom and onto the nursing floor. Dkt. #5, pp.78-79. She previously worked at a deli, but was terminated for calling in and being unable to get things right on orders due to her inability to concentrate. Dkt. #5, p.81. She also worked at a factory for a little while, but had a problem with a co-worker sexually harassing her, which prompted flashbacks and left her scared to go to work and unable to concentrate when she was at work. Dkt. #5, p.81. She was also terminated from Arby's after a couple of weeks because it was "too fast paced" and couldn't accommodate her constant asthma attacks. Dkt. #5, p.83. Plaintiff cares for rescued and abused animals at her home, including eight rescue cats, clarifying that there isn't much to do with a cat; they just want to sit on your lap and be petted. Dkt. #5, pp.84 & 104.

Plaintiff testified that she is unable to work because of constant chest pain due to her COPD and an inability to be far from her breathing machine, as well as an inability to concentrate and constant panic attacks. Dkt. #5, pp.84-85. She is on six different lung medications and restricted from extreme temperature changes and extreme odors. Dkt. #5, pp.87-88. She testified that it is hard for her to walk from room to room or even carry on a conversation without getting out of breath. Dkt. #5, p.94. She can stand about five minutes and sit for ten to twenty minutes before she feels like she

has to get up and move or do something, explaining: "[i]f I have trouble concentrating I just get in the mode where I just feel like I can't hold still, but at the same time the breathing's not helping it so then I have to sit back down because of that." Dkt. #5, p.94. She has trouble concentrating and remembering things, explaining that she is always thinking about a lot of other things constantly and has racing thoughts popping in and out of her head. Dkt. #5, pp.95-96.

Plaintiff testified that she has isolated herself and doesn't have friends and doesn't like to be around people she doesn't know well because of bad anxiety. Dkt. #5, p.97. She has difficulty getting along with her fiancee and relating to friends and family because she doesn't feel as though they understand her or the things she has been through. Dkt. #5, p.96. She cannot take stairs and sits to fold laundry. Dkt. #5, pp.97-98. Her fiancee does most of the cooking; she can only put things in the microwave. Dkt. #5, p.98. She can fill her cat's food and water dishes, but her fiancee has to take the dog out for her. Dkt. #5, p.99.

The VE was asked to assume an individual with the residual functional capacity ("RFC"), to perform light work[1] with no exposure to humidity and wetness, no

---

[1] Light work involves lifting no more than 20 pounds at a time and occasionally lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

exposure to dust, fumes or pulmonary irritants, no exposure to extreme cold or extreme heat, who was limited to simple, routine repetitive tasks and simple work related decisions. Dkt. #5, p.109. The VE testified that such an individual would be able to work as a sorter or mail clerk, both of which were unskilled positions. Dkt. #5, pp.110-111. When asked to consider an individual who would be off task more than 20 percent of the time and absent from work more than two days per month, the VE testified that, based upon her experience, plaintiff would be precluded from substantial gainful employment. Dkt. #5, p.111. The VE clarified that the maximum tolerance for an individual in an unskilled jobs to be off task was 15% or no more than one day per month. Dkt. #5, p.112.

The ALJ rendered a decision that plaintiff was not disabled on May 1, 2017. Dkt. #5, pp.13-25. Plaintiff submitted additional evidence to the Appeals Council, which denied review on May 17, 2018. Dkt. #5, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 16, 2018. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one

rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to

the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since her application date of May 21, 2014; (2) plaintiff's asthma, COPD, post-traumatic stress disorder ("PTSD"), depressive disorder, anxiety disorder and low back pain constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the residual functional capacity to perform light work with the following limitations: occasional lifting of twenty pounds, no more than six hours of sitting, no exposure to humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold or extreme heat, performance of simple, routine and repetitive tasks, use of judgment for up to simple work-related decisions and up to occasional appropriate responses to supervisors, coworkers and the public; and (5) plaintiff was capable of working as a sorter or ticket taker, each of which constitute unskilled, light work. Dkt. #5, pp. 18-25.

Plaintiff argues that it was improper for the ALJ to rely upon his own interpretation of the medical evidence to determine plaintiff's physical RFC. Dkt. #6-1, pp.11-12. More specifically, plaintiff emphasizes that there was no medical opinion in the record as to the functional effects of plaintiff's respiratory ailments. Dkt. #6-1, pp.12-16. Furthermore, plaintiff argues that the ALJ rejected the only opinion in the record

regarding the functional effects of plaintiff's mental impairments, leaving him with no medical basis for his mental RFC. Dkt. #6-1, pp.16-20.

The Commissioner responds that the medical record of plaintiff's sporadic treatment for acute illness and normal spirometry afforded the ALJ sufficient evidence from which to discern that her respiratory impairments were not disabling. Dkt. #8-1, pp.14-15. As to plaintiff's mental impairments, the Commissioner responds that the ALJ provided good reasons for affording nurse practitioner Ross' opinion partial weight and appropriately utilized her treatment notes to discern plaintiff's mental RFC. Dkt. #8-1, p.17.

In light of the essentially non-adversarial nature of a social security proceeding, it is well accepted that an ALJ has an affirmative duty to develop the administrative record. *See, e.g., Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). Due to the difficulty in determining whether individuals suffering from mental illness will be able to adapt to the demands or stress of the workplace, the duty to develop the record is particularly important where mental illness is present. *Marcano v. Berryhill*, 17 Civ. 4442, 2018 WL 5619749, at *11 (S.D.N.Y. July 13, 2018). This duty exists even when the claimant is represented by counsel. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). However, the ALJ is required to seek out additional evidence only where there are obvious gaps in the record. *Eusepi v. Colvin,* 595 Fed. App'x 7, 9 (2d Cir. 2014). The ALJ is not obligated to seek additional medical records where the record evidence is sufficient for the ALJ to make a disability determination. *Johnson v. Comm'r of Soc. Sec.,* 16-CV-831, 2018 WL 1428251, at *5 (W.D.N.Y. March 22, 2018).

SSA regulations in effect when plaintiff filed her claim provide that the agency "will request a medical source statement," although the lack of a medical source statement does not, by itself, necessarily render the record incomplete. *Pellam v. Astrue*, 508 Fed. App'x 87, 90 n.2 (2d Cir. 2013), *citing* 20 C.F.R. § 404.1513(b)(6). In *Tankisi v. Commissioner of Social Security*, for example, the Court of Appeals declined to remand where an ALJ failed to request medical source opinions but the extensive medical record contained an assessment of plaintiff's limitations by the treating physician. 521 Fed. App'x 29, 34 (2d Cir. 2013). In *Pellam*, the Court of Appeals determined that the ALJ was not required to obtain a medical source statement from one of plaintiff's treating physicians because the ALJ's assessment of plaintiff's RFC was largely supported by a consultative examiner's report. 508 Fed. App'x at 90. Thus, an RFC finding without treating source opinion evidence will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source. *Smith v.Comm'r of Soc. Sec.*, 337 F. Supp.3d 216, 225 (W.D.N.Y. 2018).

"Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's physical limitations, the ALJ may not rely on the record in determining the plaintiff's RFC." *Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp.3d 122, 128 (W.D.N.Y. 2018). Stated another way, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual capacities, the ALJ may not make the connection himself. *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp.3d 286, 293 (W.D.N.Y. 2018). This is because an ALJ is not a medical professional, and is not

qualified to assess a plaintiff's RFC on the basis of bare medical findings. *Williams v. Comm'r of Soc. Sec.*, 366 F. Supp.3d 411, 416 (W.D.N.Y. 2019). Thus, district courts have permitted an ALJ to use common sense judgment about functional capacity without a physician's assessment only when the medical evidence reveals minor physical impairments. *Id.* at 417-418. Where the ALJ identifies severe impairments for which plaintiff received significant treatment, a medical opinion addressing plaintiff's functional limitations is required. *Id.* at 418. Moreover, because mental limitations, by their very nature, are highly complex and individualized, the leeway afforded ALJ's to use common sense judgment to assess an RFC in the absence of opinion evidence does not typically extend to the determination of mental limitations. *Dye v. Comm'r of Soc. Sec.*, 351 F. Supp.3d 386, 392-393 (W.D.N.Y. 2019).

Although there is no medical source opinion regarding plaintiff's severe respiratory impairments, *to wit*, asthma and COPD, aside from acute episodes of asthma and bronchitis (Dkt. #5, p.305, 346, 368-369, 372, 375), treatment records generally reveal good airflow, clear breath sounds and normal pulmonary function tests. Dkt. #5, pp. 266, 268, 286, 292, 299, 349-350, 357, 400, 420). Moreover, plaintiff has received minimal treatment for complaints of back pain. Dkt. #5, p.285. Thus, the ALJ's physical RFC is supported by substantial evidence.

With respect to plaintiff's mental impairments, however, the only medical opinion contained within the record is that of Psychiatric & Mental Health Nurse Practitioner ("PMHNP") Danielle Ross, who had treated plaintiff for 5 months as of

March 8, 2016, when she completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination. Dkt. #5, pp.458. PMHNP Ross indicated that plaintiff suffered from PTSD, Depression and Anxiety, noting symptoms such as intrusive thoughts, flashbacks, poor sleep, poor energy, multiple triggers, hyper-vigilant and easily startled. Dkt. #5, p.459. PMHNP Ross further noted the following work activities to be contraindicated: work conditions with loud noise, fast pace, multiple people, multi-tasking or detailed work. Dkt. #5, p.459. She indicated that plaintiff would be very limited in her ability to interact appropriately with others and maintain socially appropriate behavior without exhibiting behavior extremes and moderately limited in her ability to understand and remember instructions, carry out instructions, maintain attention and concentration, make simple decisions and function in a work setting at a consistent pace. Dkt. #5, p.459. The ALJ acknowledged this opinion, but determined that "the record does not reflect such level of debility in the claimant's allegations, let alone clinical mental status findings." Dkt. #5, p.23. In support of this assessment, the ALJ noted that plaintiff interacts appropriately with providers and currently sustains a relationship with her fiancé and stepson. Dkt. #5, p.23.

Because nurse practitioners were not included within the scope of acceptable medical sources at the time of filing of this claim, the opinion of PMHNP Ross is not entitled to any particular weight under the regulations. *Genier v. Astrue,* 298 Fed. App'x 105, 108 (2d Cir. 2008); *Wider v. Colvin*, 245 F. Supp.3d 381, 389 (E.D.N.Y. 2017). However, the ALJ is required to evaluate evidence from such sources using the same factors applied to acceptable medical sources, *to wit:* consideration of the length,

nature and extent of the treatment relationship and the frequency of examination; evidence in support of the opinion; the opinion's consistency with the record as a whole; and other relevant factors. *Evans v. Colvin*, 649 Fed. App'x 35, 39 (2d Cir. 2016). The ALJ is not permitted to cherry pick from the treatment record evidence that is inconsistent with the treating source's opinion in order to conclude that such opinion should be accorded less weight nor is he permitted to substitute his own lay opinion for that of a medical source. *Quinto v. Berryhill*, No. 3:17-cv-24, 2017 WL 6017931, at *14 (D.Ct. Dec. 1, 2017).

Contrary to the ALJ's assessment, plaintiff's treatment record consistently references plaintiff's hypervigilance, psychomotor agitation, startle response to loud noises, paranoia and anxious mood and affect. Dkt. #5, pp.383, 385, 388, 390, 397, 402, 403, 407, 408, 410, 411, 463. Moreover, the Appeals Council was presented with a Mental Health Treating Medical Source Statement from Psychiatric Nurse Practitioner Gerald Frisicaro, who plaintiff began seeing subsequent to PMHNP Ross, indicating that plaintiff's ability to follow work rules and function independently was fair and her ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stress and maintain attention and concentration was poor (Dkt. #5, p.50), however, the Appeals Council determined that this evidence did not show a reasonable probability that it would change the outcome. Dkt. #5, p.6

The Appeals Council was also provided a letter from Social Worker Greg Voltman, dated July 13, 2017, stating:

>Over the past five months, [plaintiff] has begun to stabilize
>with her with her symptoms, through combination of
>medication and psychotherapy. However, her trauma history
>is complex and pervasive in her daily life. She frequently
>experiences dissociative symptoms, hyperstartle response,
>nightmares, emotional numbing, avoidance of trauma stimuli
>and social avoidance in general. Frequently, she lapses into
>re-experiencing episodes and is panic stricken throughout.
>DBT skills have been introduced to her and are rehearsed
>daily in preparation for trauma processing with EMDR. Our
>treatment team believes she is not fit to work, nor should be
>placed in circumstances that could further trigger her
>symptoms or predispose her to self-harm. It is uncertain to
>this team that she will ever be able to participate in vocational
>training or work in the future.

Dkt. #5, p.61. The Appeals Council determined that this letter, as well as supporting treatment notes dated June 9, 2017 through October 10, 2017, did not affect the decision as to whether plaintiff was disabled prior to May 1, 2017, the date of the ALJ's decision. Dkt. #5, p.6. While this opinion is based upon treatment subsequent to the ALJ's decision, the Court notes that it references back to February of 2017, which is prior to the ALJ's decision, and is consistent with the opinions of plaintiff's mental health providers during the relevant time period. *See Vargas v. Comm'r of Soc. Sec.*, 11-CV-5683, 2019 WL 6727085, at *10 (E.D.N.Y. Dec. 11, 2019) (ALJ not entitled to set medical source statement aside merely because it was issued subsequent to relevant time period where opinion related back to relevant period).

Having discounted the only medical source opinion in the record before him with respect to plaintiff's severe mental impairment, the ALJ was not free to substitute his own opinion as to plaintiff's mental RFC based upon his own review of plaintiff's mental health treatment records. Accordingly, this matter is remanded for

further development of the record, including, but not limited to, consideration of the evidence presented to the Appeals Council.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #6), is granted in so far as plaintiff seeks remand and the Commissioner's motion for judgment on the pleadings (Dkt. #8), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** Buffalo, New York
March 17, 2020

     *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**